Oiuef Justice Marshall
delivered the opinion of the Court.
This bill was filed by a portion of the heirs - of N. c. Marsh against his devisees and his administrator with the will annexed, to obtain administration of the personal estate of the testator; and the bill having been dismissed, the sole question presented for our consideration is whether the decedent has by his will exonerated his personal estate from the payment of debts and legacies, and thrown the whole burthen upon the real estate.
This question has occurred very frequently in the English Chancery, and the result of the cases seems to be that, although the personal estate is the primary an(i natural fund for payment of debts and legacies, the testator may> as between the devisees' or heir on the one side, and the legatees or distributees on the other, change the order of liability and make the debts and legacies fall exclusively upon the real estate, to the en-^1’*3 exoneration of the personalty. To produce this effect, however, it must not only appear that he has charged the real estate, but also that he has discharged or exonerated the personalty from its natural and appropriate burthen. And whether he has done so in the particular case, is the precise point of enquiry.
It seems formerly to have been held that the persona^ estate was not exonerated, unless the testator ex-Pressty declared such to be his intention. In more modern cases, however, it is held that though there be not , r . .. . express words ot exoneration, yet n the intention to *361 exonerate appear so plainly upon the whole will, or by any part of it-, as to convince the mind of the Judge, that intention should be carried into effect. A variety of circumstances or expressions have, in different cases, been taken as sufficiently demonstrative of intention, one way or the other. But in Booth vs Blundel, (1 Merivale’s Ch. Rep. 192,) Lord Eldon shows that the same words or clauses indifferentwills have,by different Judges, been taken as authorizing opposite inferences when compared with the entire will, and that it is only from the whole will that the-effect of particular clauses can be determined, and the intention satisfactorily deduced. In Ancaster vs Mayer, Lord Thurlow, after analysing the will and stating inferences from its different clauses, said: “The true ground upon which I proceed, is not upon any of these criticisms, but simply upon the rule of law, the testator not having declared by express words, or by any other declaration which would tend, in law, to the purpose of preserving the personal estate for any given purpose whatever.” It might be inferred from the rule, as thus laid down, that the personal estate would not be exonerated, unless it appeared, by the will, that it was intended to be preserved for some given purpose. But it was said by the Master of the Rolls, in Hancox vs Abbey, (11 Vesey, 186,) that “the intention (to exonerate) may be found, not merely in the mode in which the personal estate is given, but also in the mode in which the real estate is given ; for the real estate may be so appropriated to the payment of the debts as to show a clear intention that it shall not be a burthen upon any other fund; though an intention to exonerate the personal estate is not in any other way expressed.” He goes on further to say: “It is true, that a devise to sell for payment of all debts shall not exonerate the personal estate. That shows nothing more than an intention that all debts shall be paid, and the real estate, if that be necessary, shall be applied. But the direction to apply a particular por tion of the real estate to the payment of one particular debt, affords a very different inference.” And it *362 was in view of such a case, that the remark first quoted from him, was doubtless made.
Clauses of the will cited.
With this view of the general doctrines on the subject, which, with a reference to numerous cases, will be found in 2 William’s on Executors, p. 1047 to 1054, and in Ram on Assets, chap. 3, sec. 5, and chap. 6, sec. 2, 8 vol. of Law Library, we pass to a statement of the will itself, on which the question in this case arises. ■
The will first notices that a farm which had been purchased by himself and his brothers T. and B. for their sister R. had been conveyed to him, and he desires that it be held by his brothers in trust for her and her heirs. lie then gives to his said sister R. the sum of $2000, payable in three years, to be held by bis said brothers in trust for her, and at her death to go to her children and descendants, if any. To his nephew A. C. he gives $500, to be paid in five years. To B. R. $1000, to be paid in one year; and at the end of the will he gives to his namesake, N. K., $500, to be paid in six years; and to his brother T., in trust for J. C., his Pioneer jenny, &c. After the three first legacies, the will emancipates a female slave, with certain direction^ as to her treatment, &c. &c., and then proceeds as follows :
“I devise to my brother Benedict B. Marsh, as my trustee, the farm on which I live and the slaves I own, to him and his successors forever, subject to the following condition: he is to see that my slaves are well treated and attended to and properly worked and managed as long as'they live, and all the children of said slaves, born after my death, shall be raised and attended to by my said trustee, until they are twenty-one years old, and as they respectively attain to that age, they shall be free. He shall pay all of my debts and legacies as they fall due, and the balance of the yearly proceeds of the farm and slaves shall belong to the said Benedict, to be used as his own, but he is not to have the liberty to sell the land or the slaves. My object is that the land and the slaves shall be kept together un *363 til the slaves to be bom shall be raised and liberated. I do not expect my said trustee to live to see the end of it, but I wish him to appoint a suitable trustee to hold and manage the farm for the purposes aforesaid, the children or heirs of said Benedict to have the proceeds after paying the trustee a reasonable compensation; and as soon as the slaves are all liberated, the fee simple title in the said land to vest in the said Benedict’s heirs at law to be held by them forever.”
The fact that no disposition is made of the personalty, is a strong circumstance against the inference that it was the intention of the testator to exonerate it, though it may not be conclusive.
This is the entire substance of the will, and a transcript of so much of it as relates to the real estate. The will makes no bequest of any part of the personal estate except the gift of the Pioneer jenny. It makes no disposition of the residue, names no executor, and with the single exception of the Pioneer jenny, is wholly silent as to the .personalty. Then it must be left to its natural condition and to the disposition which the law makes of it, for payment of debts and legacies, unless the clauses relating to the real estate, by making that the exclusive fund for such payment, necessarily exonerate the personal estate, either wholly or so far as the real estate will go, and thus leaves the personalty or the residue of it subject to distribution. But it would seem strange that if the testator intended thus to exonerate the personal estate, he did not make some disposition of it, or, in the words Lord Thurlaw, declare or evince some purpose of the exoneration.
There is force too in the argument that as so much care was taken to place the property of his sister R. in trust for her and her children, it is strange that the testator should not have secured, in a similar manner, her portion of the personalty, if he had intended or expected it to be free from its liability to debts, &c., and subject to distribution. From these considerations and from the fact that no provision is made for personal expenses, which devolve naturally upon the personal estate, the inference is suggested that the testator intended and expected the personalty to remain under its proper legal liability for debts and expenses, or that he did not think of it, or that he may have supposed that *364 in making his brother Benedict his trustee, he was making him executor with power over the personalty. But conceding that although the personal estate, with the exception of one item, remains wholly undisposed of and unnoticed, the inferences above stated are not decisive ; and that although there is wanting the declaration of a pui’pose for exonerating the personalty which Lord Thurlow deemed necessary, it may yet be exonerated, still it must be adm itted that under the circumstances stated, the personal estate cannot be discharged in the absence of any express declaration to that effect, unless by such manifest appropriation or exclusive charge of the debts and legacies upon the real estate, as leaves no room for rational doubt that the testator intended the real estate to hear th e entire bur-then. Does the disposition made of the real estate furnish demonstration of such an intention?
The- withdrawal to a great extent of the real estate from the payment of debts and legacies, by the will, and its appropriation to other purposes, is also a circumstance against the conclusion that the intention was to charge the real, and exonerate the personal estate.
In looking to the will for an answer to this question, we find that the real estate and slaves, so far from being directly appropriated to the payment of debts or legacies, are, to a great extent, withdrawn from liability for them by the prohibition of any sale of either. And, instead of the land being devised in trust for the payment of debts and legacies, the primary object of the trust is evidently to carry out the testator’s plan for the treatment and management of his slaves, and for the emancipation of their offspring. The land is appropriated primarily to this purpose without the power of alienation for a period which might extend to sixty or seventy years after the testator’s death. It is only the annual profits, after supporting the slaves, old and young, that are free from this trust. And even this surplus, if any, is not expressly appropriated to the payment of debts or legacies. There seems, therefore, to be no plausible ground for saying that the personal estate is clear or necessarily exempt by the disposition made of the real estate, unless it is to be understood that the devise to the trustee or to his heirs is on condition of his or their paying the debts and legacies,
The amount of! indebtedness of the testator, ani other iaets appearing in the-case, also considered in arriving at the intention of the testator, on the question of the-exoneration of! the personalty.
But the trustee himself is to have no benefit from the devise, unless it be the balance of the proceeds of the farm and slaves ; and certainly there is nothing on the face of the will to show that these proceeds will pay the debts and legacies as they become duo, or that they would even keep down the interest, or enable the trustee to borrow the money for their payment. On the face of the will the legacies amount to $4000, payable on an average in about three years; and by the'answer of the trustee, who is also the administrator, and whose statements are admitted for the purpose of this question, it appears that the debts exceed $11,000, while the personal estate is only between $6,000 and $7,000; that the annual rent of the land would .be about $600, and the hire of the available slaves would probably amount, at present, to little more than enough to support such as are incapable of labor, or at any rate not to enough, with the annual rent of the farm, to pay six per cent, on the amount of debts and legacies. The land itself is worth about $23,000. But it is not to be sold.
The debts were due at the death of the testator, or at the end of six months from the grant of administration, within which no' suit could be brought against the administrator. Then, as it is at least doubtful whether the proceeds of the land and slaves, kept together as directed, would at any time pay the interest on the debts and legacies, or enable the trustee to raise the money to pay them, the will cannot-be considered as providing the means of payment independently of the pei'sonalty. It should not, therefore, be construed as requiring the trustee to pay them without resort to the personalty as the condition of any interest in the land given either to him or his heirs, unless such requisition be unequivocally manifested. If there be such a condition without the means of compliance, the trustee might, it is true, avoid the burthen imposed upon him. But what then would become of the trust, and of the debts and legacies'! These last would still have to be paid, and the trust for the benefit of the slaves should *366 jn some way, be substantially carried out. And when this should be accomplished the devise to the heirs of Bendict would take effect. In the meantime the debts and legacies would be paid out of the personalty, and with the means which might be drawn from the land and slaves with as little violation of the testator’s intention, with respect to them, as might be; and the question would come at last, whether the real estate, after the slaves became free, should reimburse the amount contributed by the personalty, which, with its interest, might exceed the value of the real estate.
The unreasonableness and futility of the supposed provision for paying thedebts and legacies,as theyshould fall due, without resort to the personalty, affords a strong ai’gument against the existence of any such intention ; and we are of opinion that such intention is not demonstrated by the language of the will. It is true the devise of the farm and the slaves to the trustee, Ben-dict, and his successors, is made subject to the following condition. But the condition immediately following relates wholly to the management and treatment of the slaves, and to the liberation of those born after the testator’s death. The succeeding sentence, “he shall pay all my debts and legacies as they fall due, and the balance of the yearly proceeds, &c., shall belong to said Benedict,” &c., although it certainly expresses a duty of the trustee and an object of the trust, is not necessarily embraced under the word condition, unless that word be understood, as it probably should be, as equivalent to the word trust, and as, therefore, merely referring to the trusts or purposes of the devise. And if the land and slaves had been devised expressly in trust, to manage and liberate the slaves, as directed in the first of these sentences, and upon the further trust, or for the further purpose of paying all the debts and legacies as they fall due out of the yearly proceeds, the balance to belong to the trustee, &c., and denying the power of sale. This would have amounted, at most, to a charge upon the yearly profits, and not to an exoneration of the personalty, (Ancaster vs Mayer, supra, and *367 11 Vesey, supra,) even if the yearly profits were sufficient to raise money to meet the charge. And much less should it be taken as an exoneration- of the personalty, when the yearly proceeds ai-e inadequate to the payment intended.
But the will does not say he shall pay out of the annual proceeds, which in fact he could not do. As the payment could not in any manner be ma'de out of the annual proceeds, there could have been no balance after such payment, and the inference arising from the disposition of the balance following immediately upon the direction to pay, is repelled. How then was it intended that the trustee should pay? Was it to be out of his own estate when the devise, under the restriction imposed, did not furnish the means even of paying the annual interest, and would probably never do so? Or was he to do it by means of the proceeds after the application and the exhaustion of the personalty? The first alternative would suppose the imposition of a bur-then without recompense and without even the means of bearing it. The last only supposes that the testator might have considered that the personal estate would, as a matter of course and of law, be appropriated to the payment of debts, and that the legacies being postponed by the will might be paid as they fell due, or that he might have considered that in making his brother Benedict trustee, and directing him to pay the debts and legacies, he was in effect making him executor, or at least designating him as the person to administer his estate. For it is to be observed that he not only fails to appoint an executor, eo nomine, and not only makes his brother Benedict a trustee, but calls him his (the testator’s) trustee. And in fact upon the face of the will itself, taking into consideration the omission to dispose of the personalty, or to appoint an executor, and the fact that the land itself is not subjected to the . payment of debts, &c., but both land and slaves, except the annual proceeds actually withdrawn, and the proceeds subjected only by implication, we think the fair inference is, that the testator supposed he was giving *368 pjg trustee power over his whole estate, and in effect making him his executor; and that the requisition that he should pay the debts, &c., was based upon this idea, and therefore implied a subjection of the personalty, as well as of the annual proceeds of the land and slaves to the required payment. And if this be not the proper inference from the whole will, we should adopt the inference that the testator supposed the law would apply the personalty to-the payment of debts, &c., and intended to leave it subject to this appropriation, rather than to suppose that he intended to impose the entire burthen on the trustee, when he was not furnishing him the means of bearing it, nor any fair equivalent for it.
We have met with no case in which a will resembling this in its substantial features has been held to'exonerate the personal estate, nor indeed have we met with •any in which such exoneration has been effected, without some disposition being made of the personalty by the will. The case of Bridgman vs Dove, (1 Atkyns, 200,) is a strong authority in favor-of the conclusion that ■the ■direction in this will that the devisee in trust shall ■pay the debts, &c., -is not to be regarded as a condition •throwing the whole burthen upon that devisee or upon the land. In the case of Miles vs Leigh, (3 Atkyns, 573.) The whole personalty was bequeathed to testator’s wife, and his land devised to her for life, and the legacy to his daughter w’as to be paid to her in twelve ■months after his son R. should come to enjoy the premises, and if R. should die before the wife, H., another son, coming to the possession of the premises, should ■pay, &c. Here was not only a plain intent that the person who possessed the real estate should pay the legcy, which, in effect, made its payment a condition annexed to the estate, but the additional fact that the whole personalty was bequeathed away; and the conclusion adopted by the Chancellor, that the personal estate was exonerated, seems to be unavoidable.
There is not, in our opinion, any such clear demonstration, nor in fact any satisfactory demonstration in *369 the will before us, that the testator intended to answer the payment of all the debts and legacies out of the real estate, or by the devisee out of his own property, as a condition of the devise of the 'real estate, or that he intended to exonerate the personalty, or has in any way done it.
Smiths and B. fy A. Monroe for heirs; G. Davis for devisees.
Wherefore, the decree is affirmed.